UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RIVA DEL LAGO CONDOMINIUM
ASSOCIATION, INC.,

          Plaintiff,

    v.

Case No. 2:24-cv-1056-KCD-KRH

STEADFAST INSURANCE
COMPANY,

          Defendant.

_____/

## <u>ORDER</u>

Plaintiff Riva Del Lago Condominium Association, Inc. says that Hurricane Ian caused over $24 million in damage to its high-rise building. Defendant Steadfast Insurance Company, the property's insurer, accepted partial coverage and cut a check for just over $8,300. To bridge that gap, Riva filed this breach of contract suit. (Doc. 23.)[1] And Steadfast now moves for summary judgment. (Doc. 67.)

Steadfast presses two arguments. First, Riva cannot recover the policy's replacement cost value because it has not yet repaired or replaced the damaged property. (*Id.* at 2.) Second, Riva lacks sufficient proof of damage to the building's windows and doors because its engineering expert improperly extrapolated his findings from a sample of units. (*Id.* at 3.)

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

Neither argument succeeds. Steadfast seeks to strictly enforce the policy's condition that repairs be made before "Replacement Cost or ordinance or law coverage is due." (*Id.* at 2.) But that is no longer the law, at least for this Court. When an insurer allegedly breaches the policy by withholding coverage, it cannot then hide behind a repair-contingent provision to block the insured from recovering replacement cost damages at trial. *See Universal Prop. & Cas. Ins. Co. v. Rodriguez*, 427 So. 3d 676 (Fla. 6th DCA 2026). Those are the facts here. *Cf. Bravo v. United States*, 532 F.3d 1154, 1164 (11th Cir. 2008) ("[W]e look to the decisions of the Florida appellate court that would have had jurisdiction over an appeal in this case had it been filed in state court."). As for the damages issue, that ship sailed. The Court has evaluated Riva's engineering expert, approved his extrapolation methodology as sufficiently reliable, and declined to exclude his opinions. (Doc. 100.) With that testimony secure, Riva has marshaled the evidence needed to substantiate its damages and send this dispute to a jury.

## I. Background

The baseline narrative is straightforward. Steadfast insured Riva's property when Hurricane Ian tore through the area. No one disputes that the storm caused damage. (*See* Doc. 24 ¶ 14.) Nor do they dispute that the hurricane was a covered loss under the policy. (*Id.* ¶ 27.)

Steadfast investigated the claim and paid Riva a total of $8,307.49 for wind damage to secondary components like the spa pavilion and tennis lights. (*See* Doc. 67-1.) As for the main tower, Steadfast concluded that while some hurricane damage occurred, it did not cross the building's $3.6 million deductible. (*Id.* at 1.) Riva strongly disagreed with that valuation. It submitted a proof of loss backed by repair estimates that eventually climbed past $24 million, a figure which includes replacement of the tower's main roofs and hundreds of windows and sliding glass doors. (Doc. 67-5, Doc. 67 ¶ 10.)

Riva has spent about $4 million out-of-pocket on various structural repairs, though it has not yet replaced the roofs or most of the windows. (Doc. 75 ¶ 15.) To establish the scope of that window and door damage, Riva retained an engineer, Dr. Anurag Jain. He inspected about 27% of the complex and used statistical sampling to project building-wide damage. As mentioned, the Court has already evaluated Dr. Jain's sampling methodology and determined it is legally reliable. (*See* Doc. 100.)

The current dispute centers on the mechanics of the policy's payment provisions. By default, the policy promises to pay the actual cash value ("ACV") for any direct physical loss or damage to the property from a covered peril. (Doc. 67 at 6-7.) ACV is generally understood to mean the cost to repair or replace covered property subject to a deduction for depreciation. But Riva

3

purchased an optional upgrade: replacement cost coverage ("RCV"). As the name suggests, this provision swaps out actual cash value and instead allows the insured to recover the full cost of replacing the damaged property without any deduction for depreciation. (*Id.* at 8.) The policy expressly allows Riva to recover both, first securing a payment for ACV before making a claim for RCV benefits later. (*Id.*)

The policy's replacement-cost promise, however, comes with a catch. Steadfast will not pay RCV "[u]ntil the lost or damaged property is actually repaired or replaced," and "[u]nless the repairs or replacement are made as soon as reasonably possible after the loss or damage." (*Id.*) The policy's ordinance or law endorsement—which covers the increased costs of bringing a damaged building up to code—features the same contingency. (*Id.* at 10.) Because Riva has not completed repairs, Steadfast argues these conditions remain unfulfilled and the extra coverage remains out of reach.

## II. Legal Standard

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Smothers v. Childers*, 159 F.4th 922, 930 (11th Cir. 2025). "When deciding a motion for summary judgment, a judge is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Las Brisas Condo. Homes Condo.*

4

*Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-CV-41-KCD, 2023 WL 8978168, at *1 (M.D. Fla. Dec. 28, 2023). A genuine issue exists if a reasonable jury could return a verdict for the nonmoving party. *See, e.g.*, *Martinez v. GEICO Cas. Ins. Co.*, 152 F.4th 1323, 1330 (11th Cir. 2025). "And a fact is material if it might affect the outcome of the suit under the governing law[.]" *Gervin v. Florence*, 139 F.4th 1236, 1245 (11th Cir. 2025).

The moving party "bears the initial burden to demonstrate the basis for its motion, and must identify the portions of the record which it believes demonstrates the absence of a genuine issue of material fact." *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018). "The burden then shifts to the non-moving party to rebut that showing by producing affidavits or other relevant and admissible evidence beyond the pleadings." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012). In reviewing the evidence, we draw all reasonable inferences in the nonmoving party's favor. *See Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020).

### III. Discussion

We can quickly dispose of Steadfast's evidentiary argument targeting Dr. Jain. The Court recently blessed his methodology and cleared him to testify. That ruling ends the debate over whether Riva has enough evidence to pursue the damages claimed. *See, e.g.*, *Montecalvo v. Union Gen. Hosp., Inc.*, No. 2:11-CV-00004-RWS, 2012 WL 4933303, at *6 (N.D. Ga. Oct. 16,

2012) ("This presents a classic case of dueling experts, which has created a genuine dispute as to a material fact."). Once expert evidence is deemed admissible, its persuasiveness is a matter for the jury, not for a judge on summary judgment. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 459 (2016). Steadfast's request for summary judgment on the damages question is thus a nonstarter.

That leaves the main event: the fight over the policy's payment conditions. Steadfast reads these provisions literally and chronologically. In its view, because Riva has not repaired nor replaced the roofs or windows, the association has failed to satisfy the condition precedent required to unlock either RCV or ordinance and law benefits. (Doc. 67 at 15.) So the Court should grant summary judgment and preclude Riva's claim for these damages. (*Id.*)  Riva, on the other hand, cries foul. It argues that Steadfast cannot withhold the ACV properly due, which is the main allegation of this suit, and then fault Riva for failing to finish the repairs needed to unlock RCV. (Doc. 75 at 9.)

The parties' dispute boils down to this: when an insurer is sued for failing to fully pay a claim, does contractual language designed to preclude certain coverage until after repairs are completed bar the insured from seeking those damages at trial when the repairs remain incomplete? Because

6

this Court sits in diversity, the answer depends on Florida law. *See Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1027 (11th Cir. 2017).

Neither side has pointed to a definitive answer from the Florida Supreme Court. Nor has the Eleventh Circuit resolved this question in a published decision. (*See* Doc. 67, Doc. 75, Doc. 78.) When that happens, this Court must follow the rulings of the intermediate Florida appellate court that would hear the case had it been in state court. *See Bravo*, 532 F.3d at 1164. For a case originating in Fort Myers, that directs us to the Sixth District Court of Appeal. And as it happens, the Sixth District recently addressed what damages are recoverable here. *See Universal Prop. & Cas. Ins. Co. v. Rodriguez*, 427 So. 3d 676 (Fla. 6th DCA 2026).[2]

In *Rodriguez*, the insureds held a replacement-cost policy dictating that the insurer would pay ACV up front and then cover RCV as the repair work was performed. Following a storm, the insureds submitted a claim that was denied. They then sued for breach of contract and sought to introduce their replacement-cost estimates to the jury, even though they had not completed

---

[2] The Eleventh Circuit does have an unpublished decision addressing (and adopting) Steadfast's argument. *See, e.g.*, *Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, 395 F. App'x 659, 665 (11th Cir. 2010). But unpublished opinions are not binding precedent. *Liberty/Sanibel II Ltd. P'ship ex rel. Gen. Partner, LRE Props., Inc. v. Gettys Grp., Inc.*, No. 2:06-CV-16FTM29SPC, 2007 WL 1109274, at *1 (M.D. Fla. Apr. 12, 2007). And they certainly do not lock in matters of state law. *McNamara v. Gov't Emps. Ins. Co.*, 30 F.4th 1055, 1060 (11th Cir. 2022). If a federal appellate court makes a prediction about state law in an unpublished decision, that prediction must yield when a state appellate court later speaks on the issue. *Id.*

any repairs. The insurer made the same argument Steadfast presses here: because the insureds never performed the work, the contract limited their damages to ACV.

The Sixth District rejected that argument, holding that when an insurer wrongfully denies a covered claim, it cannot use the policy's repair-contingency language to block the insured from seeking replacement-cost damages at trial. The panel explained that a breach of contract action is "designed to adjudicate not only whether the contract was breached but also the precipitate damages incurred by the insureds by way of an assessment of what position they should have been in had the breach not occurred." *Id.* at 680. And "[t]hat includes not only the actual cash value payment but also the additional payments to account for the replacement cost that the insurer would have been obligated to pay upon the making of repairs had it not allegedly breached the contract by denying coverage." *Id.* So the fact that the contract makes RCV contingent on the insured having already incurred those expenses does not prevent a jury from adjudicating what those costs would be had the contract been complied with in the first instance. *Id.* ("[I]t defies logic to limit such an inquiry to actual cash value when the contract governing the action entitles the insured to replacement cost without deduction for depreciation.").

That same logic applies here. It is undisputed that Steadfast denied Riva's claim that its roof and window damage exceeded the deductible. On that basis, Steadfast maintained that it had no further obligation to Riva and was unwilling to pay for those damages. If the jury believes Steadfast breached the policy by rejecting such losses, then the "damages inquiry . . . inherently includes what might have happened but for the breach." *Brito v. Citizens Prop. Ins. Corp.*, 415 So. 3d 252, 258 (Fla. 2nd DCA 2025) (Atkinson, J., concurring). In other words, "what the insurer would have been obligated to pay under the insurance policy had it complied with the policy." *Id.* Since the policy "obligations manifestly include both the initial payment of the actual cash value as well as the subsequent payments to account for the replacement cost," Riva is entitled to present all such evidence. *Id.*

Aside from the rationale in *Rodriguez*, basic contract principles also compel this result. Under Florida law, a material breach frees the nonbreaching party to suspend its own performance. From there, it can demand the full benefit of its bargain—meaning damages designed to put it in the exact position it would have occupied had the other side followed the rules. *Rector v. Larson's Marine, Inc.*, 479 So. 2d 783, 785 (Fla. 2nd DCA 1985). Insurance policies are no exception to this rule. *See Forbes v. Prime Gen. Contractors, Inc.*, 255 So. 3d 448, 451 (Fla. 2nd DCA 2018).

The loss settlement section of the parties' insurance contract is not a coverage limitation. "[I]t just prescribes how and when the payment of covered losses is to be divvied up." *Brito*, 415 So. 3d at 257. If Steadfast materially breached the policy by refusing to pay the ACV for the disputed hurricane damage, Riva's obligation to perform the contingent condition— funding and completing the structural repairs—should be excused. Steadfast cannot point to the unfinished work and act like the parties are in the middle of a normal claim adjustment, ignoring its own alleged failure to perform. What is more, "a party who, by his own acts, prevents performance of a contract provision cannot take advantage of his own wrong." *N. Am. Van Lines v. Collyer*, 616 So. 2d 177, 179 (Fla. 5th DCA 1993).

Finally, consider the practical reality of Steadfast's position. It argues that if Riva does not spend millions of dollars replacing the property's roof and windows—repairs that Steadfast insists are not covered—the association is precluded from asking a jury to award those costs. That argument strains credulity. It places Riva in the "untenable position of paying for what they contend should be covered by the insurer and then hoping that the insurer will have a change of heart, despite repeated denials, and reimburse them for their loss." *Weston v. Universal Prop. & Cas. Ins. Co.*, 425 So. 3d 638, 643 (Fla. Dist. Ct. App. 2025). Florida law does not require that Hobson's choice. *Id.*

Steadfast looks for a way around *Rodriguez*. It first argues that *Rodriguez* involved a homeowner's policy governed by Fla. Stat. § 627.7011, whereas here we have a commercial policy. (Doc. 95 at 2.) But the Sixth District anchored its ruling in general principles of contract law regarding recoverable damages following a breach. The court barely mentioned § 627.7011, citing the provision simply to outline the baseline payment structure. Because the commercial policy here follows that same structural sequence—even if it uses slightly different words—Steadfast's efforts to separate the two falls flat.

Second, Steadfast attempts to distinguish between a total denial of coverage and a partial one. Steadfast insists that, unlike the insurer in *Rodriguez*, it never denied the claim. Because it adjusted and paid a portion of the loss, this is a fundamentally different dispute. (*See* Doc. 95 at 6-8.)

That argument misses the forest for the trees. Riva's entitlement to recover its benefit-of-the-bargain damages (*i.e.*, RCV) hinges on whether Steadfast materially breached the policy—not on whether Steadfast denied coverage. The policy here, just like in *Rodriguez*, requires Steadfast to do two things: acknowledge coverage and pay ACV for *all* covered damages. (*See* Doc. 67 at 6-8.) Steadfast's failure to do either is a material breach. And the same structural problems discussed in *Rodriguez* arise whether the denial applies to the whole claim or only a part of it. From a contract law

11

perspective, it makes no difference whether the insurer wrongfully zeroes out a claim or wrongfully underfunds it. In either scenario, the insurer has breached its upfront obligations, thereby freeing the policyholder to seek its full measure of damages. *See, e.g.*, *Weston*, 425 So. 3d at 643 ("[A]pplication of the loss settlement section to preclude the [insured] from seeking [all] damages here suffers from the same infirmities as it does in those cases where coverage has been denied entirely.").

In the end, *Rodriguez* dictates the outcome here. True, this Court has viewed the issue differently in the past. *See Funbar Hall LLC v. Nat'l Fire & Marine Ins. Co.*, 820 F. Supp. 3d 1337, 1341 (M.D. Fla. 2026). But state law belongs to the states. Now that the Sixth District has held "[i]t defies logic to limit such an inquiry to actual cash value when the contract governing the action entitles the insured to replacement cost without deduction for depreciation," this Court must fall in line. *Rodriguez*, 427 So. 3d at 680.

## III. Conclusion

Riva accuses Steadfast of materially breaching the policy by withholding ACV payments for covered damages. If a jury agrees that Steadfast shirked its upfront obligations, Riva is entitled to pursue its full measure of damages. That includes the replacement costs and ordinance and law coverage it would have received had the insurer simply kept its word. Steadfast cannot starve the association of its mandatory initial payment and

12

then use the resulting lack of completed repairs to escape a trial on those other components. *Rodriguez*, 427 So. 3d at 680; *cf. Brito*, 415 So. 3d at 258; *Weston*, 425 So. 3d at 643.

For these reasons, Steadfast's Motion for Summary Judgment is **DENIED**. The Court will deal with any evidentiary objections regarding Riva's replacement-cost or ordinance-and-law figures at trial.

**ORDERED** in Fort Myers, Florida on July 7, 2026.


Kyle C. Dudek
United States District Judge